FILED
March 31, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| PAUL TESSIER, CO-TRUSTEE OF THE ANNE T. TESSIER FAMILY TRUST; 2M & 3D LTD, TEXAS LIMITED PARTNERSHIP; A.H. ROOT BUILDING, LLC; ALLA INVESTMENTS, LLC; BLACK TORTUGA GROUP, LLC; DANIEL M. BELL; BUTT RENTALS, LLC; SYDNEY CRISP AND NICOLA CRISP; DONNA DEKKER-ROBERTSON, TRUSTEE OF THE DEKKER-ROBERTSON FAMIILY TRUST; HUGH G. DYKES III, TRUSTEE OF THE DYKES FAMILY REVOCABLE TRUST DATED JULY 7, 2004; HARRY V. HANSEN AND JOANNE P. HANSEN, TRUSTEES OF THE HANSEN FAMILY TRUST UTA DATED JANUARY 31, 2006; JANE HEIDER-SAMUELS AND LAWRENCE SAMUELS, TRUSTEES OF THE HEIDER-SAMUELS FAMILY TRUST DATED JUNE 29, 2007; WILLIAM D. AND SUSAN M. MADDEN; ADELAIDA MARTINEZ; RYAN ONG, TRUSTEE OF THE RYAN AND LISSA ONG LIVING TRUST; JOHN AND JANICE POLK; WILLIAM SMITH; AND STACY SCHIFFMAN, | § | Case No. 1-24-cv-01532-ADA |
| *Plaintiffs,* | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| PATRICK CAPITAL MARKETS, LLC | § | |
| *Defendant.* | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

The Anne T. Tessier Family Trust by and through Co-Trustee Paul Tessier; 2M & 3D Ltd. by and through its limited partners Dan Ngo and Marina Thai; A.H. Root Building, LLC by and through Michael

D. Plante; ALLA Investments, LLC by and through its managing member Faron A. Page; Black Tortuga Group, LLC by and through its member Heath Basham; Daniel Bell; Butt Rentals, LLC by and through its member Louis G. Buttny; Sydney & Nicola Crisp; The Dekker-Robertson Family Trust by and through Trustee Donna Dekker-Robertson; The Dykes Family Revocable Trust Dated 7 July 2004, by and through Trustee Hugh G. Dykes III; The Hansen Family Trust UTA Dated January 31, 2006, by and through Trustees Harry V. Hansen and Joanne P. Hansen; The Heider-Samuels Family Trust Dated June 29, 2007, by and through Trustees Lawrence K. Samuels and Jane Heider-Samuels; William and Susan Madden; Adelaida Martinez; The Ryan and Lissa Ong Living Trust, by and through Trustee Ryan Ong; John and Janice Polk; William Smith; and Stacy Schiffman ("Plaintiffs"), file this Second Amended Complaint against Defendant Patrick Capital Markets, LLC ("Defendant") and would respectfully show as follows:

## I. INTRODUCTION

1. This case arises out of Defendant's role as managing general broker with respect to the solicitation and sale of investments in NP Skyloft, DST, a Delaware statutory trust and the purported owner of the Skyloft student apartment complex at 507 West 23rd Street in Austin, Texas ("the Skyloft Complex"). The Skyloft Complex was the sole material asset of NP Skyloft, DST. Defendant, acting in concert with Patrick Nelson, deliberately violated its duties to Plaintiffs by systematically failing to disclose and actively misrepresenting the risks of the investment, including the risk that: (1) NP Skyloft, DST, did not own or control the Skyloft Complex; (2) the Skyloft Complex had not been transferred to the Skyloft DST; (3) the Skyloft Complex was subject to and at risk of a sale by the Trustee (NP Skyloft ST, LLC) to a new buyer; (4) the Skyloft Complex was ultimately sold by NP Skyloft ST, LLC to TCG Skyloft Owner LLC, and not transferred to NP Skyloft, DST; and, (5) the monies invested by Plaintiffs and others had been subject to misappropriation of the prior Trustee, NP Skyloft Equity, LLC and Patrick

Nelson. These risks and the information concerning these risks had been made available to the Defendant, but Defendant did not provide this information to Plaintiffs.

2. In the investment memoranda and information provided by Defendant, the control and management of NP Skyloft, DST and its assets was described as follows:



3. Neither the investment memorandum nor any information provided by Defendant to Plaintiffs advised that the NP Skyloft, DST assets were subject to a forced sale, or that a forced sale had been initiated. Following the forced sale, the control and management of NP Skyloft, DST and its primary assets was as follows:



4. Defendant was fully aware of the forced sale provisions, but deliberately failed to disclose this relevant and material information to the plaintiffs prior to their investment, thereby depriving Plaintiffs of essential information necessary to make an informed investment decision.

## II. PARTIES, JURISDICTION AND VENUE

**A. Plaintiffs/Investors.**

5. Plaintiff Paul Tessier is the Co-Trustee of the Anne T. Tessier Family Trust, which is a beneficiary of and an investor in NP Skyloft, DST. Paul Tessier is a resident of Florida.

6. Plaintiff 2M & 3D Ltd, a Texas Limited Partnership is a beneficiary of and an investor in NP Skyloft, DST.

7. Plaintiff A.H. Root Building, LLC, a Limited Liability Company of Colorado, is a beneficiary of and an investor in NP Skyloft, DST.

8. Plaintiff Alla Investments, LLC, a Limited Liability Company of Colorado, is a beneficiary of and investor in NP Skyloft, DST.

9. Plaintiff Black Tortuga Group, LLC, a Limited Liability Company of Texas, is a beneficiary of and an investor in NP Skyloft, DST.

10. Plaintiff Daniel Bell is a beneficiary of and an investor in NP Skyloft, DST. Daniel Bell is a resident of Texas.

11. Plaintiff Butt Rentals, LLC, a Limited Liability Company of Illinois, is a beneficiary of and an investor in NP Skyloft, DST.

12. Plaintiff Sydney Crisp and Nicola Crisp are beneficiaries of and investors in NP Skyloft, DST. Sydney Crisp and Nicola Crisp are residents of Tennessee.

13. Plaintiff Donna Dekker-Robertson is the Trustee of the Dekker-Robertson Family Trust which is a beneficiary of and an investor in NP Skyloft, DST. Donna Dekker-Robertson is a resident of California.

14. Plaintiff Hugh G. Dykes III is the Trustee of The Dykes Family Revocable Trust Dated 7 July 2004 which is a beneficiary of and an investor in NP Skyloft, DST. Hugh G. Dykes III is a resident of California.

15. Plaintiff Harry V. Hansen and Joanne P. Hansen are the Trustees of the Hansen Family Trust UTA Dated January 31, 2006 which is a beneficiary of and investor in NP Skyloft, DST. Harry V. Hansen and Joanne P. Hansen are residents of California.

16. Plaintiff Lawrence K. Samuels and Jane Heider-Samuels are Trustees of the Heider-Samuels Family Trust dated June 29, 2007 which is a beneficiary of and an investor in NP Skyloft, DST. Lawrence K. Samuels and Jane Heider-Samuels are residents of California.

17. Plaintiff William and Susan Madden are beneficiaries of and investors in NP Skyloft, DST. William and Susan Madden are residents of Massachusetts.

18. Plaintiff Adelaida Martinez is a beneficiary of and an investor in NP Skyloft, DST. Adelaida Martinez is a resident of Texas.

19. Plaintiff Ryan Ong is the Trustee of the Ryan and Lissa Ong Living Trust which is a beneficiary of and an investor in NP Skyloft, DST. Ryan Ong is a resident of Georgia.

20. Plaintiff John and Janice Polk are beneficiaries of and investors in NP Skyloft, DST. John and Janice Polk are residents of Texas.

21. Plaintiff William Smith is a beneficiary of and an investor in NP Skyloft, DST. William Smith is a resident of Texas.

22. Plaintiff Stacy Schiffman is a beneficiary of and an investor in NP Skyloft, DST. Stacy Schiffman is a resident of New York.

**B. Defendant.**

23. Defendant Patrick Capital Markets, LLC [CRD#: 16518] was directly involved in soliciting the investment from Plaintiffs and can be served through its Registered Agent Richard E. Griffard, at 11152 South Towne Square, St. Louis, MO 63123. Defendant has been served and has appeared.

**C. Jurisdiction and Venue**

24. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 excluding interest and costs as to each of the Plaintiffs.

25. Venue is appropriate because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district.

26. The claims asserted herein contain questions of law or fact and arise out of the same transaction or occurrence, or series of transactions or occurrences.

## III. FACTUAL BACKGROUND

27. In 2019 through 2020, Defendant actively and aggressively promoted an investment in NP Skyloft, DST and circulated a confidential private placement memorandum, dated December 19, 2018 ("PPM"), which had been prepared by knowing Nelson Partners, LLC and Patrick Nelson (collectively, "Nelson Partners"). Defendant nevertheless authorized Nelson Partners, which was not a licensed broker-dealer, to operate and promote the investment under Defendant's broker-dealer license. Defendant served as the critical control point and exclusive information conduit acted as the pipeline between Nelson Partners and retail brokers marketing the investment, placing them in a unique position of authority and responsibility.

28. The PPM referred to NP Skyloft, DST as "the Trust". A copy of the PPM was delivered to Paul Tessier, trustee of the Anne T. Tessier Family Trust on June 14, 2019; to 2M & 3D, Ltd. on January 10, 2020; to A.H. Root Building, LLC on December 20, 2019; to Alla Investments, LLC on February 7, 2020; to Black Tortuga Group, LLC on July 3, 2019; to Daniel Bell on March 15, 2019; to Butt Rentals, LLC on October 2, 2019; to Sydney Crisp on July 26, 2019; to Donna Dekker-Robertson, Trustee of the Dekker-Robertson Family Trust on December 13, 2019; to Hugh G. Dykes, III, Trustee of The Dykes Family Revocable Trust Dated 7 July 2004 on April 12, 2019; to Harry V. Hansen and Joanne P. Hansen, Trustees of the Hansen Family Trust UTA Dated January 31, 2006 on August 2, 2019; to Lawrence K. Samuels and Jane Heider-Samuels, Trustees of the Heider-Samuels Family Trust Dated June 29, 2007 on December 13, 2019; to William Madden on November 27, 2019; to Adelaida Martinez on October 11, 2019; to Ryan Ong, Trustee of the Ryan and Lissa Ong Living Trust on July 3, 2019; to John and Janice Polk on December 20, 2019; to William Smith on August 23, 2019; and to Stacy Schiffman on July 8, 2020.

29. The PPM represented that "[t]he Trust will acquire the high-rise, student-housing apartment complex commonly known as Skyloft, located near the University of Texas at Austin at 507 West 23rd Street, Austin, Texas." The PPM represented that "[t]he investment objectives of the Trust are to acquire and manage the Property to generate income with tax benefits, preserve principal and provide the potential for long-term growth."

30. The PPM further represented the Trust would generate income from its ownership of the Trust Property through rents. The Trust would distribute monthly rental income to the investors. The PPM included ten years of projected distribution payments by the Trust to investors. Thus, Plaintiffs expected the Trust to hold the Trust Property for approximately ten years before it would sell the Trust Property for

an anticipated profit that would also be distributed to the investors, providing the long-term growth referenced in the PPM.

31. The Trust was structured to allow investors to acquire their interests in the Trust through a like-kind exchange under Internal Revenue Code Section 1031, as the PPM represented. A Section 1031 exchange allows individuals to defer the taxation on gains derived from the sale of appreciated real property by reinvesting those gains into another real property, such as the Trust Property.

32. According to the PPM, in order to close the acquisition of the Trust Property, a preferred equity provider (the "Preferred Equity Provider") may provide capital through beneficiaries of the Trust, which capital would be used to close the acquisition. However, the sale of interests to investors was to be used to repay the Preferred Equity Provider. The Preferred Equity Provider would provide capital to the Trust through an entity called NP Skyloft JV, LLC, a joint venture between an affiliate of Nelson Partners and the Preferred Equity Provider. According to this risk factor, in the event the Preferred Equity Provider is not repaid in full, the Investor should not expect to receive distributions until it is paid in full. Further, according to the PPM, the worst potential outcome that could result if the capital provided by the Preferred Equity Provider is not repaid would be a reduction of "cash flow available to operate the Property and to pay distributions to the Investors."

33. Axonic provided capital to the Trust through three Delaware limited liability companies it created: AXSPV LLC Series NB CRE Lender, AXSPV LLC Series SBL CRE Lender, and AXSPV LLC Series ACO CRE Lender, whose successors in interest are Burgundy 523 Offshore Fund, LLC; Axonic Special Opportunities SBL Master Fund LP; and Axonic Special Opportunities SBL Master Fund L.P. (collectively, the "Axonic Preferred Equity Providers"), all of whom were managed by Axonic Capital LLC.

**A. The Secret JV LLC Agreement not described in the PPM.**

34. The PPM and other materials provided by and through Defendant to Plaintiffs did not disclose the existence of an agreement whereby Equity and the Axonic Preferred Equity Providers entered a Limited Liability Agreement of NP Skyloft JV, LLC, dated February 26, 2019 (the "JV LLC Agreement"). The Axonic Preferred Equity Providers made a $35,000,000 capital contribution to JV and, in exchange for the $35,000,000 capital contribution, the Axonic Preferred Equity Providers became "Special Members" of JV and received "Special Member Interests" in JV. The JV LLC Agreement further required JV to redeem the Axonic Preferred Equity Providers' Special Member Interests no later than February 25, 2020 (the "Mandatory Redemption").

35. The PPM further failed to advise investors that NP Skyloft Equity, LLC, Nelson Partners, LLC, and Patrick Nelson ("The Nelson Entities") and various Axonic related entities, including Burgundy 523 Offshore Fund, Ltd.; Axonic Special Opportunities SBL Master Fund, LP; Axonic Credit Opportunities Master Fund, LP and Axonic Capital, LLC ("Axonic Entities"), through their control of the Axonic Preferred Equity Providers agreed to keep the JV LLC Agreement and its terms secret, according to Section 13.20 of the JV LLC Agreement. NP Skyloft, DST, and the Plaintiffs were not parties to the JV LLC Agreement and were not advised in any way of the secret JV LLC Agreement. Although Defendant was provided information about the JV LLC Agreement and its adverse effect on investors in NP Skyloft, DST, Defendant did not provide this information to the retail brokers marketing the investment, and they did not provide this information to Plaintiffs.

**B. The PPM Supplement.**

36. Four days after the JV LLC Agreement's effective date, the Nelson Entities issued a Supplement to the Private Placement Memorandum, dated March 2, 2019 (the "Supplement"). The Supplement confirmed that "a preferred equity provider contributed $35,000,000 of capital to the Trust."

The Supplement represented that "[t]hree special purpose entities, each owned by a separate investment fund managed by Axonic Capital, provided the preferred capital." The Supplement represented that "[u]pon the sale of the Interest, the net proceeds, less commissions and fees paid to the broker-dealers and their representatives, will be used to repay the capital contributed by the Preferred Equity Provider."

**C. Plaintiffs' Investment.**

37. On June 19, 2019, Paul Tessier, on behalf of the Anne T. Tessier Family Trust, delivered $192,675.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

38. On January 15, 2020, Dan Ngo and Marina Thai, on behalf of 2M & 3D, Ltd., delivered $500,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement. 2M & 3D, Ltd. also received $15,000.00 in investor credits for a total investment of $515,000.00.

39. On December 26, 2019, Michael D. Plante, on behalf of A.H. Root Building, LLC, delivered $100,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

40. On February 12, 2020, Faron A. Page, on behalf of ALLA Investments, LLC, delivered a total of $210,749.15 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

41. On July 10, 2019, Heath Basham, on behalf of Black Tortuga Group, LLC, delivered $1,517,641.74 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

42. On March 20, 2019, Daniel Bell delivered $100,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

43. On December 9, 2019, Louis G. Buttny, on behalf of Butt Rentals, LLC, delivered $185,802.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

44. On July 31, 2019, Sydney and Nicola Crisp delivered $150,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

45. On December 18, 2019, Donna Dekker-Robertson on behalf of the Dekker-Robertson Family Trust, delivered $101,401.88 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

46. On April 17, 2019, Hugh. G. Dykes III, on behalf of The Dykes Family Revocable Trust Dated 7 July 2004, delivered $83,401.79 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

47. On August 7, 2019, Harry V. Hansen and Joanne P. Hansen on behalf of the Hansen Family Trust UTA Dated January 31, 2006, delivered $550,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

48. On December 18, 2019, Jane Heider-Samuels and Lawrence K. Samuels, trustees of the Heider-Samuels Family Trust dated 6/29/2007, delivered $300,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

49. On December 4, 2019, William Madden delivered $496,771.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

50. On October 16, 2019, Adelaida Martinez delivered $120,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

51. On July 10, 2019, Ryan Ong, on behalf of the Ryan and Lissa Ong Living Trust, delivered $119,935.01 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

52. On December 26, 2019, John and Janice Polk delivered a total of $800,000.00 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

53. On August 28, 2019, William Smith delivered $143,078.24 to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement.

54. On July 8, 2020, Stacy Schiffman delivered $212,500.00 for $431,514.97 in beneficial interest to Defendant through a retail broker and executed the NP Skyloft, DST Trust Agreement provided by them. Again, on November 12, 2020, Stacy Schiffman delivered two transactions - $522,965.92 and $312,264.59 and executed the NP Skyloft, DST Trust Agreement for a total Skyloft investment of $1,047,730.51. The purchase included a discounted share value for a total investment share value of $1,266,745.48 to Defendants and others and executed the NP Skyloft, DST Trust Agreement.

The total amount of Plaintiffs' investment is $6,734,186.32.

**D. The NP Skyloft, DST Trust Agreement.**

55. Section 2.03 of the Trust Agreement limits the activities of the Trust to acquiring and owning the Trust Property and entering certain specifically identified agreements related to the acquisition and operation of the Trust Property. The Trust is authorized to own the Trust Property, associated fixtures and furniture, and cash necessary for the maintenance of the Trust Property. It is not permitted to engage in a business or hold any other assets. These limitations are necessary for an investment in the Trust to qualify for a Section 1031 exchange.

56. Section 2.04 of the Trust Agreement provides, "[t]he Trustees hereby declare that they will hold the Trust Property upon the terms and conditions herein for the benefit of the Investors …."

57. Section 6.04 of the Trust Agreement provides, "[t]he Trustees shall manage, control, dispose of or otherwise deal with the Trust Property consistent with their duties to ***conserve and protect*** the Trust Property, subject to any restrictions required by the Loan Documents, or otherwise provided in this Trust Agreement."

58. Section 7.02 of the Trust Agreement provides, "[t]he Signatory Trustee has a duty to ***conserve and protect*** the Trust Property for the benefit of the Investors and is hereby authorized and directed to take any and all necessary actions on behalf of the Trust, or to cause the Trust to take the same, to conserve and protect the Trust Property for the benefit of the Investors …."

59. Section 7.02(a) of the Trust Agreement specifically imposes a duty on the Signatory Trustee "to take any and all necessary actions on behalf of the Trust, or to cause the Trust to take the same, to ***conserve and protect*** the Trust Property for the benefit of the Investors, including, but not limited to … acquiring, owning, conserving, protecting and selling the Real Estate."

60. Section 9.02 of the Trust Agreement provides, if "the Signatory Trustee determines that the Investors are at risk of losing all or a substantial portion of their investment in the Interests, … the Signatory Trustee shall, in compliance with such conditions precedent and other requirements as may be set forth in the Loan Documents (if still in force), terminate the Trust and distribute the Trust Property to the Investors in the manner provided in Section 9.03." Section 9.03(a) provides if a loan secured by the first mortgage or trust deed on the Trust Property remains outstanding, then the Signatory Trustee must transfer the Trust Property to a Delaware limited liability company and convert the Investors' ownership interest into equivalent membership interests in the limited liability company.

61. Section 5.03 of the Trust Agreement provides that "prior to the Signatory Trustee entering into a binding contract to sell or convey the Real Estate, the Signatory Trustee shall notify the Investors of such potential transaction and solicit their views on the transaction. The Signatory Trustee shall consider the Investors' views and opinions in good faith, but not be bound by such opinions and the decision to do the transaction or not rests solely with the Signatory Trustee."

62. The Trust Agreement does not authorize NP Skyloft, DST to pay money to the Axonic Preferred Equity Providers to satisfy a debt owed by JV or the Nelson Entities.

63. The Trust Agreement does not authorize the Trust or Trustee to sell the Trust Property to satisfy a debt owed by JV or the Nelson Entities.

64. The Trust Agreement does not authorize JV or the Axonic Preferred Equity Providers to cause the Trustee or the Trust to sell the Trust Property to satisfy a debt owed by JV.

65. The Trust Agreement does not authorize the sale of the Trust Property to repay a debt owed by JV or the Nelson Entities.

**E. The Failure to Pay the Preferred Equity Investors.**

66. The PPM and the Supplement represented that Axonic Preferred Equity Providers would be repaid upon the sale of the Interests.

67. The offering of the Interests yielded nearly twice the amount of money needed to repay the Axonic Preferred Equity Providers.

68. The money received by the Trust from the offering of the Interests could only be used to repay the Axonic Preferred Equity Providers, acquire the Trust Property, and pay fees and costs associated with the offering and the acquisition of the Trust Property.

69. Despite the representations of the PPM and the Trust Agreement, JV failed to fully redeem and repay Axonic Preferred Equity Providers.

70. Defendant did not disclose any of the information related to the Trust's failure to pay the preferred equity investors, and the information that was provided by Defendant to Plaintiffs or to the retail brokers who communicated with Plaintiffs was materially misleading in light of the Trust's failure to pay the preferred equity investors.

**F. The Axonic Defendants Take Control of JV, the Trustee, and the Trust.**

71. In May 2020, pursuant to the secret JV LLC Agreement, the Axonic Entities claimed that they took management control of JV and thus claimed that they had management control of the Trustee.

JV then forced a sale of the Skyloft Complex, to a third-party buyer, and did not pay the proceeds of the sale to the Trust.

72. Defendant never notified the retail broker, Plaintiffs or other investors that the Axonic Entities had taken management control of the Trustee, even though this information had been provided to Defendant. As a result of Axonic's assumption of control of the Trustee and subsequent sale of the Skyloft Complex, left the NP Skyloft, DST without its primary asset and rendered the Plaintiffs' investment worthless.

73. Defendant did not disclose any of the information related to JV taking control of the Trust or the forced sale of the Skyloft Complex, the principal asset of NP Skyloft, DST. Furthermore, the information that was provided by Defendant was materially misleading in light of JV's seizure of the Trust and right of the forced sale of the Skyloft Complex.

74. Defendant had received a draft of the Limited Liability Company Agreement of NP Skyloft JV, LLC. That draft, and the final version, purported to give the Axonic lenders the right to exercise a forced sale of the Skyloft property, in the event the Nelson Entities defaulted. Neither Defendant, nor any retail broker operating under its management, forwarded this Agreement to Plaintiffs, nor advised Plaintiffs of the forced sale provisions.

## IV. CLAIMS

**First Claim: Negligent Misrepresentation.**

75. Plaintiffs incorporate by reference paragraphs 27 through 74 above.

76. Defendant provided information to Plaintiffs in the course of Defendant's business and in a transaction in which Defendant had a substantial pecuniary interest. The information provided to Plaintiffs by Defendant and the retail brokers operating under its management was for the guidance of Plaintiffs and was false, misleading, and systematically failed to fully and properly inform the Plaintiffs

of the catastrophic risks of the investment. Defendant did not use even minimal reasonable care in communicating the information, and Plaintiffs justifiably relied on the information provided by those promoting the investment. Defendant's negligent misrepresentation directly and proximately caused Plaintiff's substantial financial injury.

77. Defendant specifically failed to advise Plaintiffs and, in some instances, the retail brokers operating under its management of the risks of a forced sale, or that a forced sale of the Skyloft Complex was contemplated, even though this information had been provided to the Defendant. This nondisclosure resulted in the information being provided to Plaintiffs being false.

**Second Claim: Breach of Fiduciary Duty.**

78. Plaintiffs incorporate by reference paragraphs 27 through 74 above.

79. Defendants owed a fiduciary duty to Plaintiffs based on its formal relationship as a securities broker. Defendant allowed Nelson Partners to operate under its broker-dealer license, hereby assuming direct responsibility for Nelson Partners' conduct. Defendant further acted as managing broker-dealer and selectively funneled, or in some instances withheld, information from retail brokers that was relevant to an assessment of the extreme risk associated with the investment at issue.

80. By withholding the information described above, Defendant placed its own interest in receiving a sales commission above the interests of the Plaintiffs. Defendant's failure to fully disclose all known risks of the investment to the Plaintiffs and Defendant's withholding of adverse information from the Plaintiffs and the retail brokers under its management are a breach of Defendant's fiduciary duty to the Plaintiffs.

81. This breach caused injury to Plaintiffs and resulted in benefit to Defendant.

**Third Claim: Violation of Texas Securities Act**

82. Plaintiffs incorporate by reference paragraphs 27 through 74 above.

83. Defendant violated Section 4008.052 of the Texas Securities Act by willfully omitting material facts necessary to make their statements not misleading in connection with the sale of securities. Specifically, Defendant failed to disclose the forced sale provisions of the agreements, despite its direct and comprehensive awareness of those provisions. These omissions were material, as a reasonable investor would have considered the Defendant's conflicting roles and financial interests important absolutely essential in making an investment decision. No reasonable investor, properly informed of these provisions, would have proceeded with the investment on the same terms, if at all.

## V. CONDITIONS PRECEDENT

84. All conditions precedent have been satisfied.

## VI. AGENCY AND AIDING/ABETTING ALLEGATIONS

85. Wherever it is alleged an entity committed an act, such act was engaged in by its officers, agents, managers, managing members, or other persons with actual or apparent authority to act, and/or has conspired to commit such an act, and/or knowingly participated in the act by the entity owing a fiduciary duty.

## VII. APPLICATION OF THE DISCOVERY RULE

86. The injury to Plaintiffs was inherently undiscoverable and objectively verifiable. Plaintiffs plead that the accrual of causes of action on the facts at issue in these claims should be deferred until Plaintiffs knew, or by exercising reasonable diligence, should have known, of the facts giving rise to the claim.

## VIII. ATTORNEY'S FEES

87. Plaintiffs have engaged the firm of George, Brothers, Kincaid & Horton, LLP to prosecute this action and seek reasonable and necessary attorney's fees as permitted by law and contract.

## IX. DEMAND FOR JURY TRIAL

88. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of this action.

## X. PRAYER

Plaintiffs request that the Court enter the judgment in favor of Plaintiffs against Defendant, as follows:

a. An award of rescissory damages for the full amount of Plaintiffs' investments;

b. an award of attorneys' fees and costs;

c. pre- and post-award interest; and,

d. all other relief available in law and in equity to which Plaintiffs may be entitled.

Dated: June 6, 2025.

Respectfully submitted,

*/s/ B. Russell Horton*

B. Russell Horton
State Bar No. 10014450
**GEORGE BROTHERS KINCAID & HORTON, LLP**
PO Box 684767 (mailing)
Austin, Texas 78768
625 Norwood Tower (physical)
114 West 7th Street
Austin, Texas 78701
Telephone: (512) 495-1400
Facsimile: (512) 499-0094
Email: rhorton@gbkh.com
***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on June 6, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Valerie Henderson
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
1301 McKinney Street, Suite 3700
Houston, Texas 77010
vhenderson@bakerdonelson.com

W. Preston Battle IV
Lori H. Patterson
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
pbattle@bakerdonelson.com
lpatterson@bakerdonelson.com
***Attorneys for Defendant Patrick Capital Markets, LLC***

*/s/ B. Russell Horton*
B. Russell Horton